# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD DAVID WEISSKOPF, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 18-cv-5557 |
| JERUSALEM FOUNDATION, AMIT, BRIDGES FOR PEACE, EVELINA DE ROTHSCHILD MIDDLE SCHOOL FOR GIRLS, REISHIT ELEMENTARY SCHOOL, and HAREL ELEMENTARY SCHOOL, | ) Judge John J. Tharp, Jr. ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This Court has before it a case where none of the parties want to be in this forum. The plaintiff, Richard David Weisskopf, filed this lawsuit in the Circuit Court of Cook County. Weisskopf, a dual U.S.-Israeli citizen, has sued three Israeli schools, alleging that they moved his children into experimental special education programs without his consent, and took other steps to harass him after he objected to this course of action. In addition, Weisskopf has also sued three American organizations, on the basis that those organizations are alleged to have fraudulently raised donations within the United States (and within Illinois in particular) to support Israeli special education programs.

After Weisskopf filed this suit, one of the defendant schools removed it to this Court. Weisskopf responded by moving to remand the case to Illinois state court. The defendant schools, in turn, have moved to transfer the case to the U.S. District Court for the Southern District of New York. Their primary argument for doing so is that the Southern District of New York has entered an anti-filing injunction against Weisskopf as a result of his numerous previous lawsuits against

Israeli individuals and organizations in U.S. courts and retains jurisdiction to enforce that injunction. For the reasons that follow, Weisskopf's motion to remand is denied and the defendants' motion to transfer is granted.

**BACKGROUND**

Weisskopf alleges that he is a citizen of both the United States and Israel and the father of three children. *See* Compl. ¶ 4, ECF No. 1-1. He is divorced; his divorce was finalized in 2011, but he continues to have full parental rights as the biological father of his children. *Id.* ¶ 11. Weisskopf's grievances in this case stem primarily from his and his children's interactions with the Israeli educational system. According to Weisskopf, in 2015 a meeting was convened in which defendant Reishit Elementary School suggested that one of his children be moved into an experimental special education program. *Id.* ¶ 14. Weisskopf objected to this proposal. As a result, he alleges, the defendant schools[1] and the Jerusalem municipal government went behind his back to place his children with the three defendant schools and to stop him from discovering these placements. *See id.* ¶¶ 18-19. Weisskopf also asserts that the defendant schools took other actions to harass him. These include making false complaints to the police that Weisskopf was attempting to kidnap his own children; wrongfully preventing him from entering the premises of one of the schools; and billing him for services that he never consented to, leading to his assets being frozen in Israel. *See id.* ¶¶ 20, 25, 36-37.

All of the foregoing happened in Israel, so what is this case doing here? Weisskopf further contends that the three defendant Israeli schools are operating with the support of the other three

---

[1] The three schools being sued in this case—the Evelina De Rothschild Middle School for Girls, Reishit Elementary School, and Harel Elementary School—are all located in Jerusalem. Compl. ¶¶ 8-10. All three are official state religious schools that are organized and operated by the Israeli Ministry of Education. *See* Decl. of Dekel Abu, Ex. A ¶¶ 11-12, ECF No. 20.

2

defendant organizations: the Jerusalem Foundation, Amit, and Bridges for Peace. These latter three organizations are based in the United States, but not in Illinois; two are located in New York and one in Florida. *Id.* ¶¶ 5-7. According to Weisskopf, these organizations "fraudulently" raised donations throughout the United States, including from within Illinois, under the "false premise that they were supplementing special education for Israeli children who need such programs." *Id.* ¶ 31. The complaint provides no details about the fundraising efforts of the defendant organizations in Illinois (or anywhere else, for that matter), but these organizations, Weisskopf alleges, provide a "financial incentive" to the Israeli schools "to forcibly place children in costly special education programs against the will of their parents," including Weisskopf. *Id.* ¶ 35.

In May 2018, Weisskopf filed this lawsuit in the Circuit Court of Cook County. He purported to state a series of tort claims against the defendants arising under Illinois state law. In particular, he charged that the defendants were liable for intentional infliction of emotional distress, negligent infliction of emotional distress, intentional interference with parental rights, fraud, and conspiracy. He further alleges, without any detail, that he has suffered losses to his business and property in the United States and specifically within Illinois. *See id.* ¶ 3.

This lawsuit, however, is not the first suit that Weisskopf has filed in U.S. courts against Israeli individuals and entities, or against American Jewish organizations. *See, e.g.*, *Weisskopf v. United Jewish Appeal–Fed'n of Jewish Philanthropies of N.Y.*, 889 F. Supp. 2d 912 (S.D. Tex. 2012); *Weisskopf v. Marcus*, No. 16-cv-6381, 2017 WL 1196953 (N.D. Ill. Mar. 31, 2017), *aff'd as modified*, 695 F. App'x 977 (7th Cir. 2017). One other such suit was filed in the District Court for the Southern District of New York. In that case, seven divorced Israeli fathers, including Weisskopf, alleged that they were "victims of a conspiracy orchestrated by former and current Israeli government officials and a number of charities." *Newman v. Jewish Agency for Israel*, No.

3

16-cv-7593, 2017 WL 6628616, at *1 (S.D.N.Y. Dec. 28, 2017), *appeal docketed*, No. 18-244 (2d Cir. Jan. 26, 2018). Part of that alleged conspiracy involved a scheme to deprive the fathers of custody of their children and to place them into financially costly programs run by the charities. *Id.* at *1-2. The court granted the defendants' motion to dismiss the case. *Id.* at *7.

In addition, after noting Weisskopf's "clear history of vexatious litigation," Judge William H. Pauley III issued an injunction against Weisskopf, forbidding him from filing certain categories of lawsuits in the future without the court's consent. *Id.* In particular, Judge Pauley permanently enjoined Weisskopf and one of his co-plaintiffs from filing in any U.S. court "any action related to the allegations made in this lawsuit, or to their respective disputes with the Israeli family-law and child-welfare systems, or relating to contributions to or the funding thereof, or brought against the defendants in this case, the State of Israel, its agencies or instrumentalities, or its current or former officials." Order of Anti-Filing Inj. 1, ECF No. 8-1. The order establishes procedures that Weisskopf must follow before filing any such "Restricted Action." If Weisskopf seeks to file such an action in federal court, he must obtain the permission of the District Court for the Southern District of New York. *See id.* at 2. If he files it in state court, he must concurrently file a statement advising the state court of the existence of the anti-filing injunction, as well as file a notice of the state court action in the Southern District of New York. *See id.* at 5. The court expressly retained jurisdiction to enforce the terms of its order. *Id.* at 6.

After Weisskopf filed the present lawsuit in state court, the Rothschild School responded by removing the case to this Court. Weisskopf, opposing the removal, has filed a motion to remand the suit to state court. The defendant schools, in turn, have filed a motion to transfer this case to the District Court for the Southern District of New York so that court can enforce its anti-filing

injunction. Weisskopf's motion to remand and the defendants' motion to transfer are both now before this Court.

## DISCUSSION

**I.  Motion to Remand**

In its notice of removal, the Rothschild School invokes 28 U.S.C. § 1441(d), which allows a "foreign state," when sued in U.S. state courts, to remove the suit "to the district court of the United States for the district and division embracing the place where such action is pending." The statute defines what qualifies as a foreign state by cross-referencing the definition provided in 28 U.S.C. § 1603, which is part of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602-11. Section 1603(a) provides that a "foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state," and subsection (b) defines the latter term as follows:

> **(b)** An "agency or instrumentality of a foreign state" means any entity—
> **(1)** which is a separate legal person, corporate or otherwise, and
> **(2)** which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
> **(3)** which is neither a citizen of a State of the United States as defined in section 1332 (c) and (e) of this title, nor created under the laws of any third country.

The defendant schools argue that they are "agencies or instrumentalities" of the State of Israel. There is no real doubt that the schools are separate legal persons, and that they are neither citizens of any state of the United States nor created under the laws of any third country other than the United States or Israel.[2] The key question, therefore, is whether the schools are "organ[s] of a foreign state or political subdivision thereof" under the meaning of § 1603(b)(2).

---

[2] Weisskopf asserts that a body called the "Anglo-Jewish Organization" has owned the Rothschild School since the 1960s, and that this organization was "created under British law." *See* Pl.'s Consolidated Reply to Mot. to Remand and Sur-Reply to Def.'s Mot. to Transfer

Neither the Supreme Court nor the Seventh Circuit appears to have established a specific test for what constitutes an "organ" of a foreign state under the FSIA. Nevertheless, courts have pointed to various factors in making this assessment. One common formulation of the list of factors to be considered includes "(1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights to some right in the [foreign] country; and (5) how the entity is treated under foreign state law." *Filler v. Hanvit Bank*, 378 F.3d 213, 217 (2d Cir. 2004). This is not a mechanical test; courts employing this approach engage in a balancing process without putting emphasis on any one particular factor or requiring all of them to point in the same direction. *See Gates v. Syrian Arab Republic*, Nos. 11-cv-8715, 11-cv-8913, 12-cv-1836, 12-cv-2983, 2013 WL 1337223, at *4 (N.D. Ill. Mar. 29, 2013).

There have been a number of cases in which courts have addressed whether foreign state-run educational institutions are organs of a foreign state under the FSIA. The courts to address this issue have reached varying results. *Compare, e.g.*, *Cutcliffe v. Univ. of Ulster*, No. 12-cv-193-DBH, 2013 WL 682842, at *11 (D. Me. Feb. 5, 2013) (concluding that the University of Ulster was an "organ" of the United Kingdom), *recommended decision adopted*, 2013 WL 685668 (D. Me. Feb. 25, 2013), *with Santilli v. Cardone*, No. 8:07-cv-308-T-23MSS, 2008 WL 2790242, at

---

("Consolidated Reply") 3, ECF No. 23. The implication of Weisskopf's assertion seems to be that the Rothschild School was created under the laws of a third country, the United Kingdom. Weisskopf has not actually stated, however, that the Rothschild School was created under British law, nor has he offered any support for this conclusion. Moreover, as the defendants note, the Supreme Court has held that the inquiry into whether a body is an agency or instrumentality of a foreign state is measured at the time a suit is filed. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003). All of the evidence available in this case suggests that the Rothschild School is ***currently*** a body organized under Israeli law. *See* Decl. of Dekel Abu ¶¶ 11-12, 14.

*2 (M.D. Fla. July 18, 2008) (concluding that the University of Aquila was not an "organ" of the Italian government). In other words, the fact that a foreign entity happens to be an educational institution is not dispositive. In these cases, the courts tend to use the same five factors listed above in determining whether the school is an organ of the state in which it is located. *See, e.g.*, *Cutcliffe*, 2013 WL 682842, at *8; *Santilli*, 2008 WL 2790242, at *1; *Supra Med. Corp. v. McGonigle*, 955 F. Supp. 374, 379 (E.D. Pa. 1997).[3]

The defendant schools have put forward a forceful case that all or most of these factors point in favor of organ status in this case. First, they argue that the schools serve the national purpose of providing free, compulsory education for children in Israel. Consolidated Resp. in Opp'n to Pl.'s Mot. to Remand and Reply in Supp. of Defs.' Mot. to Transfer ("Consolidated Resp.") 3, ECF No. 20. Second, the schools are supervised by the Israeli Ministry of Education, which oversees school accreditation and prescribes curricula. *Id.* Third, the teachers and managing staff at the schools are employees of the Ministry of Education. *Id.* And fourth, under Israeli law, the Ministry of Education is legally responsible for any suits against the schools based on pedagogical or administrative decisions, such that in Israel this lawsuit would be deemed a suit against the ministry itself. *Id.* All of these factual assertions are supported by a declaration that the defendants have submitted from Dekel Abu, who represents himself as the deputy director for the Jerusalem District in Israel's Ministry of Education. *See generally* Decl. of Dekel Abu, Ex. A, ECF No. 20.

---

[3] In some other cases, where both parties have agreed that the educational institution was an agency or instrumentality of the foreign state, the court has simply taken the body's status as an organ of a foreign state as a given. *See Kettey v. Saudi Ministry of Educ.*, 53 F. Supp. 3d 40, 47, 49 (D.D.C. 2014) (treating Taif University as an instrumentality of the government of Saudi Arabia).

Weisskopf's responses to the schools' case for "organ" status are unconvincing. First, Weisskopf contends that this Court should not take the Abu declaration into account in deciding this motion because the defendants "have failed to provide any further credentials to substantiate [Abu's] position" and have failed to show that Abu "is an expert on Israeli law to give the legal opinion of 'national purpose' of the Defendant schools within the context of 28 U.S.C. § 1603(b)." Pl.'s Consolidated Reply to Mot. to Remand and Sur-Reply to Def.'s Mot. to Transfer ("Consolidated Reply") 5, ECF No. 23. Abu represents himself as an employee of the Israeli Ministry of Education who, as he has declared under penalty of perjury, is "tasked with managing the state education system in Jerusalem and its environs" and has served in the Israeli government for twenty-five years. Decl. of Dekel Abu ¶ 5. He would thus appear to be quite well positioned to provide a factual accounting of how the defendant schools interact with the Ministry of Education and explain how they are treated under Israeli law. Weisskopf has cited no legal authority to explain why Abu is not qualified to address the subjects covered in his declaration.

Second, Weisskopf disputes that the defendant schools actually serve a national purpose, arguing that "[n]o school serves a national purpose, only a community interest and purpose." Consolidated Reply 2. This conclusion, however, is inconsistent with the case law dealing with this issue. For example, in *Cutcliffe*, the court concluded that the University of Ulster "serves a national purpose of advancing education." *Cutcliffe*, 2013 WL 682842, at *11. Moreover, Weisskopf's argument on this point is simply illogical. Even if a school is located in a particular place and primarily teaches students within a local community, it can surely play a part in contributing to a larger national purpose of providing education to a country's residents. The same might be true, for example, of a local or regional tax collection office. Such a body might collect taxes from only a particular part of the country, but would also clearly serve the larger national

8

purpose of generating revenue for the national government. Under Weisskopf's reasoning, almost no institution that is located in a specific subnational unit could ever be found to serve a national purpose.

Third, Weisskopf asserts that "it is illegal for a religious elementary school that collects private donations and fees from parents to also be a political subdivision of a secular democratic government." Pl.'s Mot. to Remand to State Court 6-7, ECF No. 15. The Israeli schools, supported by the Abu declaration, contend in response that Israel's State Education Law authorizes the existence of state religious schools. *See* Consolidated Resp. 5; Decl. of Dekel Abu ¶ 11. In addition, even if Weisskopf's charge were accurate, removal in this case does not require the Israeli schools to be "political subdivisions" of Israel. The defendant schools have pushed for removal under the theory that they are agencies or instrumentalities of Israel under 28 U.S.C. § 1603(b). That requires each school to be "an organ of a foreign state or a political subdivision thereof," but it does not require the schools themselves to be political subdivisions. 28 U.S.C. § 1603(b)(2). Weisskopf has cited no legal authority to support the conclusion that a state-run religious school cannot be an agency or instrumentality of a foreign state, either in Israel specifically or as a general matter.

Finally, Weisskopf spends substantial space in his reply brief arguing that even if the defendant schools are organs of the State of Israel, they would not be immune from suit under the "commercial activity" and "tortious acts" exceptions of the FSIA. Consolidated Reply 3-5. This is beside the point. The legal question before this Court has nothing to do with whether the schools are entitled to ***immunity*** under the FSIA. Rather, the relevant question is whether ***removal*** was proper in this case. The only reason that implicates the FSIA is because the removal statute provides that foreign states are entitled to remove cases to federal courts, and the statute borrows

the FSIA's definition of what constitutes a foreign state. *See* 28 U.S.C. §§ 1441(d), 1603. At this stage, in deciding the motion to remand, this Court is not required to decide whether the defendants would in fact be entitled to sovereign immunity under the FSIA's substantive provisions. Even if one were to concede that Weisskopf is correct and the defendants would not be entitled to immunity, that would not make removal any less proper.

The Court concludes, therefore, that the defendant schools satisfy most of the factors to be considered in evaluating "organ" status. Three of the five factors listed in *Filler* point squarely in favor of "organ" status: 1) the State of Israel, through its Ministry of Education, actively supervises the schools; 2) the teachers and managing staff at the schools are public employees, employed by the Ministry of Education; and 3) the Ministry of Education is legally responsible for suits against the schools. In addition, the defendant schools could also reasonably be understood to serve the "national purpose" of providing free, compulsory education to Israeli children. Only one of the five factors points against "organ" status: there is no indication that the defendant schools hold any exclusive right to any right in Israel, and their briefing has not seriously tried to argue that they do. Based on a balancing of all of these factors, the Court concludes that the defendant schools constitute organs of a foreign state (Israel), and so they are agencies or instrumentalities of Israel under 28 U.S.C. § 1603. Thus, because this suit was brought against a foreign state, which includes an agency or instrumentality of a foreign state, § 1441(d) authorizes the removal of this suit to federal district court. Weisskopf's motion to remand is accordingly denied.

## II. Motion to Transfer

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Transferring a case under § 1404(a) is appropriate when "(1) venue is proper in the transferor

district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice." *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). Courts in the Seventh Circuit consider a variety of factors in analyzing when a motion to transfer should be granted. With respect to the "interest of justice," these factors include "docket congestion and likely speed to trial in the transferor and potential transferee forums," each court's "relative familiarity with the relevant law," the "respective desirability of resolving controversies in each locale," and "the relationship of each community to the controversy." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). With respect to the convenience of the parties and witnesses, they include the availability and access to witnesses, each party's access to and distance from resources in each forum, the location of material events, and the relative ease of access to sources of proof. *Id.* The "interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id.*

As to the issue of transfer, the primary dispute between the parties concerns Judge Pauley's anti-filing injunction. The defendant schools' principal argument in favor of transferring this case is that the Southern District of New York has continuing jurisdiction to enforce the anti-filing injunction issued against Weisskopf. *See* Mot. to Transfer Venue 5, ECF No. 8. The defendants contend that, by filing this lawsuit, Weisskopf violated the terms of that injunction. The interests of justice, therefore, would be best served by transferring the case to the Southern District of New York, which is best positioned to take the appropriate action in response. *See id.* at 5-6. Weisskopf neither challenges the validity of the injunction nor denies that he has not followed the protocols required by the injunction before filing another lawsuit in a U.S. state court. Instead, he simply argues in response that this lawsuit is not a "Restricted Action" under the terms of the anti-filing

11

injunction, and so the present suit is not affected by the injunction. *See* Pl.'s Resp. to Defs.' Mot. to Transfer Venue 2-3, ECF No. 17.

This Court concludes that, at the very least, this lawsuit arguably implicates the anti-filing injunction. For one thing, the injunction applies to all suits against "the State of Israel, its agencies or instrumentalities, or its current or former officials." Order of Anti-Filing Inj. 1. As discussed above, this Court has already determined that the defendant schools in this case are "agencies or instrumentalities" of the State of Israel as that term is defined in the FSIA. In addition, the injunction also applies to any suit involving Weisskopf's "disputes with the Israeli family-law and child-welfare systems." *Id.* The central claim in the present lawsuit is that Weisskopf's children were allegedly placed into experimental special education programs without his consent and over his objections. Such programs could reasonably be understood to fall under the heading of Israel's child-welfare systems; in the case before Judge Pauley, Weisskopf pressed a similar claim that the defendants were engaged in a scheme to deprive the fathers of custody of their children and to place them into financially costly programs run by the charities.

This Court need not answer whether the injunction applies definitively, however, because the court that is best placed to do so is the District Court for the Southern District of New York. That court is in the best position to evaluate whether this suit implicates the injunction, and if so, to determine what measures should be taken in response. The Southern District of New York is most familiar with the subject matter of the injunction, and it retains continuing jurisdiction to enforce the terms of the injunction. *See id.* at 6. There is, therefore, a high degree of desirability in resolving this controversy within that locale. *See Research Automation*, 626 F.3d at 978.

None of the other factors that courts consider in the § 1404(a) transfer analysis— individually or collectively—outweigh the desirability of having the Southern District of New

York decide the injunction issue. Weisskopf has made a series of arguments as to why this case should remain in this district; none of them are persuasive. For example, he contends that Illinois has a greater relationship to the controversy in this case, as "the complaint alleges numerous times that the Defendants conspired to defraud residents in this jurisdiction as well as the Plaintiff," and "the causes of action that gave rise to the complaint occurred in Illinois." Pl.'s Resp. to Defs.' Mot. to Transfer Venue 5. This is incorrect. Virtually all of the relevant acts described in the complaint took place in Israel. While Weisskopf does allege that the defendant American organizations were "fraudulently raising donations from within this jurisdiction" (meaning Illinois) and that he lost business and property within Illinois, *see* Compl. ¶¶ 31, 37, he provides no details or further information with respect to these allegations. Elsewhere in the complaint, he repeatedly asserts that the defendants deceived or defrauded "American donors" without any reference to where these donors may have been located. *See id.* ¶¶ 56, 64.[4] In short, nothing in the complaint indicates that Illinois has any greater relationship to the controversy than any other forum within the United States, including New York. To the extent that Weisskopf has alleged any connection between Illinois and the controversy, his allegations are so conclusory as to be of little to no weight in this Court's transfer analysis.

In addition, Weisskopf raises the issue of docket congestion and likely speed to trial. He asserts that in the Southern District of New York, "trial times can drag out for 2-3 years," whereas in the Circuit Court of Cook County, where he filed this suit, they average less than a year. Pl.'s Resp. to Defs.' Mot. to Transfer Venue 2. Weisskopf, however, has failed to cite any source for this assertion at all. Moreover, even if it were true, it is irrelevant. This Court has already concluded

---

[4] Weisskopf's complaint appears to mis-number its paragraphs. This citation is to the second paragraph numbered "56."

that removal in this case was proper and that the defendant schools were statutorily entitled to remove the case to federal court. The choice in evaluating the motion to transfer, therefore, is not between Cook County and the Southern District of New York, but rather between this Court and the Southern District of New York. Weisskopf has not presented any statistics—whether supported by citations or not—regarding the relative docket congestion of these two federal courts.

Weisskopf also argues that the issue of the convenience of the parties and witnesses points in favor of keeping this case in Illinois. He states, for example, that Illinois was his home for most of the first thirty-six years of his life and that it is his "home forum" whenever he is in the United States. *Id.* at 6. As the defendants note, however, Weisskopf has filed two previous lawsuits in the Southern District of New York; it is difficult to believe that requiring him to litigate this case in that district would be terribly inconvenient. *See* Consolidated Resp. 9. In addition, as Weisskopf's own complaint describes, two of the three defendant American organizations are located in New York (the third is based in Florida). *See* Compl. ¶¶ 5-7. It is unclear at this point who the witnesses in this case might ultimately be (and Weisskopf does not identify any specific witnesses), but given that nearly all of the actions at issue took place in Israel, there is no reason to think that Illinois would be any more of a convenient forum for witnesses than New York. For all these reasons, the Court does not conclude that the convenience of the parties and witnesses militates against transferring the case.

Weisskopf's next argument is that his choice of forum (Illinois) is entitled to significant deference. While a plaintiff's choice of forum is generally given considerable deference, that deference is lessened when the chosen forum has "relatively weak connections with the operative facts giving rise to the litigation." *Body Sci. LLC v. Boston Sci. Corp.*, 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012). As noted earlier, the connection between this lawsuit and Illinois is quite weak.

To the extent that any of the allegations in the complaint attempt to establish such a connection, those allegations are vague and conclusory.

Finally, in his reply brief, Weisskopf appears to suggest—for the first time—that the motion to transfer should be denied because venue in this case is improper in the Southern District of New York. *See* Consolidated Reply 6-7. This section of his brief bears the heading "Venue is proper in Illinois and thus, this matter should not be transferred." *Id.* at 6. This assertion is incorrect, however, as the fact that venue is proper in one forum does not alone provide a reason not to transfer a case to another. To the degree that Weisskopf purports to make an affirmative argument, it is entirely undeveloped. He does not cite the relevant venue statute, 28 U.S.C. § 1391, nor does he actually explain why venue would be improper in the Southern District of New York under its provisions. As the Seventh Circuit has made clear, such "decidedly underdeveloped" arguments are considered waived. *United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011).

Even if Weisskopf's argument regarding the propriety of venue were not waived, this Court would still reject it. There does not appear to be any question that venue was proper in the underlying case that gave rise to Judge Pauley's injunction. *See generally Newman*, 2017 WL 6628616. In other words, a substantial part of the events or omissions giving rise to the claim that led to the injunction took place in the Southern District of New York. *See* 28 U.S.C. § 1391(b)(2). That injunction, and the degree to which it applies to this case, is an integral part of the controversy that any court hearing this case must decide. For this reason alone, venue is proper in the Southern District of New York.

In summary, this Court concludes that transferring this case would serve the interests of justice because it is desirable that the District Court for the Southern District of New York decide the issue of whether the anti-filing injunction applies and, if so, what measures to take in response.

15

Similarly, this case has little to no connection to Illinois, and there is no other countervailing factor that points in favor of keeping this case within this district. Accordingly, the defendants' motion to transfer is granted.

* * *

For the reasons stated above, Weisskopf's motion to remand is denied and the defendants' motion to transfer is granted. The Clerk of this Court is directed to transfer this case to the U.S. District Court for the Southern District of New York.

Dated: January 14, 2019

John J. Tharp, Jr.
United States District Judge